**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DREYER'S GRAND ICE CREAM, INC., a Delaware Corporation, and EDY'S GRAND ICE CREAM, a California Corporation, | No. C 07-00140 CW |
| Petitioners, | ORDER DENYING PETITIONERS' MOTION TO COMPEL ARBITRATION, AND DENYING RESPONDENT'S MOTION TO DISMISS |
| v. | |
| ICE CREAM DISTRIBUTORS OF EVANSVILLE, an Indiana limited liability company, | |
| Respondent. | |
| _____/ | |

        Petitioners Dreyer's Grand Ice Cream, Inc., and Edy's Grand

Ice Cream have filed a motion to compel arbitration of their claims

against Respondent, Ice Cream Distributors of Evansville.

Respondent opposes this motion.  Respondent has filed a motion to

dismiss Petitioners' suit, for lack of personal jurisdiction and

for failure to state a claim.  Petitioners oppose this motion.  The

matter was heard on July 26, 2007.  Having considered all of the

papers filed by the parties and oral argument on the motions, the

Court DENIES without prejudice Petitioners' motion to compel

United States District Court
For the Northern District of California

1   arbitration and DENIES Respondent's motion to dismiss.

2                           BACKGROUND

3        Petitioners are manufacturers and nation-wide distributors of

4   ice cream products.  They distribute their products through a

5   company-owned distribution network and through independent

6   authorized distributors.  The independent distributors enter into

7   one of two types of distribution agreements: a Preferred

8   Distributor Agreement which is reserved for distributors who have

9   had a lengthy relationship with Petitioners and a Standard

10  Distributor Agreement for all other distributors.  The main

11  difference between the two agreements is that the Standard

12  Agreement is terminable upon thirty days notice, whereas the

13  Preferred Agreement is typically for a two year term.  Both the

14  Standard Agreement and the Preferred Agreement contain a mandatory

15  arbitration clause which survives the termination of the agreement

16  and a California venue and choice of law clause.  Hagan Dec., Ex. B

17  (Standard Distributor Agreement) at ¶¶ 8.5, 14.3-4 and Ex. A

18  (Preferred Distributor Agreement) at ¶¶ 6.6, 12.4-5.

19       In March, 2004, Petitioners executed a Preferred Agreement

20  with a company called Ice Cream Distributors, Inc., which

21  authorized that company to distribute Petitioners' products

22  throughout Kentucky and parts of Indiana.  Amended Petition to

23  Compel Arbitration at ¶ 9.  The Preferred Agreement allowed Ice

24  Cream Distributors, Inc., to assign its rights and obligations, but

25  only with Petitioners' prior written consent.  Id. at ¶ 10.  On

26  June 15, 2004, Respondent purchased the assets of Ice Cream

27  Distributors, Inc.  Petitioners did not give prior written consent

28                                 2

to the assignment of the Preferred Agreement to Respondent.  Id. at

¶ 11.  Petitioners allege that in August, 2004, they sent

Respondent two Standard Distributor Agreements, one for the

"Grocery" class of trade and one for the "New Channel" class of

trade.[1]  Motion to Compel Arbitration at 2:20-3:1.  Petitioners

claim that Respondent signed and returned the Grocery Standard

Distributor Agreement but did not sign the New Channel agreement.

Id. at 3:1-4.  Petitioners concede that after a diligent search,

they cannot find a signed copy of the Grocery Standard Agreement.

Hagan Dec. at ¶ 8.  It is undisputed that on July 2, 2004

Respondent signed an Application for Credit, containing a

California forum selection clause.  Tadlock Dec. at ¶ 2.

In 2005, Petitioners notified Respondent by letter that its

distributorship was terminated and it was no longer authorized to

distribute Petitioners' products.  Hagan Dec., Ex. D, Termination

of Distributorship Letter.  On November 9, 2006, Respondent filed

suit in Kentucky state court alleging causes of action against

Petitioners for tortious interference with contract and tortious

interference with prospective business advantage.  Motion to

Dismiss at 3:14-17.  On December 22, 2006, Petitioners removed that

action to the United States District Court for the Western District

of Kentucky.  Id. at 3:17-19.

On January 9, 2007, Petitioners filed suit in this Court to

compel arbitration to resolve three claims against Respondent.

Petitioners allege that Respondent owes them approximately $225,000

---

[1] Petitioners do not explain what these terms mean.

United States District Court
For the Northern District of California

for their products, that Respondent is continuing to distribute their products without authorization, and that Respondent owes them approximately $19,500 for freezers that were leased from them and not returned. Each of these three allegations is based upon the Grocery Standard Agreement. Hagan Dec., Ex. B at ¶¶ 1-5, 8.4, and ¶ 15-17. On January 10, 2007, in the Kentucky action, Petitioners moved to enforce the forum selection and arbitration clause and to have the case transferred to California and arbitrated based on the Grocery Standard Agreement. In both actions, the parties agreed to stay proceedings pending the outcome of mediation, which took place on May 7, 2007. The mediation was unsuccessful. Thereafter, Petitioners filed an Amended Petition to Compel Arbitration with this Court. Petitioners also filed an amended motion to enforce the forum selection and arbitration clause with the Kentucky District Court, which remains pending as of the date of this order.

                              JUDICIAL NOTICE

     Under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice of facts that are not subject to reasonable dispute because they are either generally known or capable of accurate and ready determination. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 688-690 (9th Cir. 2001); Interstate Natural Gas Co. v. Southern California Gas Co., 209 F.2d 380, 385 (9th Cir. 1953).

     Respondent has requested that the Court take judicial notice of its suit in Kentucky against Petitioners. Plaintiff has not objected. Therefore, the request for judicial notice is GRANTED.

4

DISCUSSION

I.   Personal Jurisdiction

Respondent argues that this petition should be dismissed for lack of personal jurisdiction.  Petitioners respond that the Court has specific jurisdiction over Respondent because Respondent executed the Standard Agreement and the Application for Credit, both of which provide that the parties agree to personal jurisdiction in California.

The United States Supreme Court has held that "in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n.14.  If those stipulations "have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." Id.

Petitioners argue that, even if Respondent did not sign the Standard Agreement, Respondent's Application for Credit, with its forum selection clause, provides an independent basis for the assertion of specific jurisdiction.  The Court agrees.

II.  Agreement to Arbitrate

Under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., written agreements that controversies between the parties shall be settled by arbitration are valid, irrevocable, and enforceable.  9 U.S.C. § 2.  A party aggrieved by the refusal of another to arbitrate under a written arbitration agreement may petition the district court which would, save for the arbitration agreement, have jurisdiction over that action, for an order directing that

United States District Court
For the Northern District of California

arbitration proceed as provided for in the agreement.  9 U.S.C.
§ 4.  If the court is satisfied "that the making of the arbitration
agreement or the failure to comply with the agreement is not in
issue, the court shall make an order directing the parties to
proceed to arbitration in accordance with the terms of the
agreement."  Id.  The FAA reflects a "liberal federal policy
favoring arbitration agreements."  Gilmer v. Interstate/Johnson
Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem.
Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).  A district
court must compel arbitration under the FAA if it determines that:
1) there exists a valid agreement to arbitrate; and 2) the dispute
falls within its terms.  Stern v. Cingular Wireless Corp., 453 F.
Supp. 2d 1138, 1143 (C.D. Cal. 2006) (quoting Chiron Corp. v. Ortho
Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000)).

"If the making of an arbitration agreement . . . be in issue,
the court shall proceed summarily to the trial thereof.  If no jury
trial be demanded by the party alleged to be in default, . . . the
court shall hear and determine such issue.  Where such an issue is
raised, the party alleged to be in default may, . . . demand a
jury trial of such issue . . . . If the [trier of fact] finds that
no agreement in writing for arbitration was made or that there is
no default in proceeding thereunder, the proceeding shall be
dismissed.  If the [trier of fact] finds that an agreement for
arbitration was made in writing and that there is a default in
proceeding thereunder, the court shall make an order summarily
directing the parties to proceed with the arbitration in accordance
with the terms thereof."  9 U.S.C. § 4.

6

**United States District Court**
For the Northern District of California

As noted above, Petitioners concede that they cannot find a copy of the Standard Agreement that they claim Respondent executed. Nevertheless, Petitioners argue that the existence of the Standard Agreement and its arbitration clause can be proved.

Where the issue is whether there is a valid and enforceable arbitration agreement, a court must look to the contract law of the State governing the agreement. <u>First Options v. Kaplan</u>, 514 U.S. 938, 944 (1995); <u>Circuit City Stores v. Adams</u>, 279 F.3d 889, 892 (9th Cir. 2002). The contents of a written contract that has been lost or destroyed may be proved by extrinsic evidence once there has been sufficient proof that a contract has been formed. <u>See</u> Cal. Evid. Code §§ 1400-01.

Petitioners present the sworn declaration of Mark Hagan, their sales manager for the region served by Respondent, as evidence that Respondent executed a Standard Agreement. Mr. Hagan asserts, "I specifically recall receiving a signed copy of the Standard Distributor Agreement, Grocery Channel, from Dave Garrett, one of the owners of [Respondent Ice Cream Distributors of Evansville]." Hagan Supp. Dec. at ¶¶ 2, 7. Mr. Hagan asserts that it is Petitioners' "standard business practice to enter into and finalize a contract as soon as possible with all distributors" and that "all distributors under my responsibility operate only with either a Preferred or Standard Distributor Agreement. All of these agreements include the same forum selection clause and arbitration clause." <u>Id.</u> at ¶ 10.

On December 13, 2004, Mr. Hagan sent an email to Mr. Garrett, stating, "I cannot process the Grocery contract you've already

7

given me until I have the [New Channel] contract."  Hagan Dec., Ex.
C at 1.  On December 14, 2004, Mr. Garrett replied, "I think our
attorney still has this, let me find it."  Mr. Hagan states that he
does not "recall the reasoning for the reference to 'processing' in
the statement, but [does] recall forwarding the agreement signed by
[Respondent]" to Petitioners' regional headquarters for a
signature.  Hagan Supp. Dec. at ¶ 9.  Petitioners argue that this
interchange supports their position.

On June 30, 2005, Mr. Garrett wrote in a letter to Mr. Hagan
that "ICD's offer to step us to Preferred Distributor status . . .
still stands."  Hagan Supp. Dec., Ex. 2 (June 30, 2005, letter) at
2.  Petitioners argue that this implies that there was an agreement
to "step" from and therefore also lends support to Petitioners'
assertion that Respondent had executed a Standard Agreement.
However, Respondent submits Mr. Garrett's declaration that "ICD's
records indicate that I never executed [a Standard Distribution
Agreement Grocery Channel]. . . . it was my practice to return all
agreements to Dreyer's unsigned requesting that they execute the
same and return it to me for execution. . . . if I had executed a
Standard Distribution Agreement Grocery Channel on behalf of ICD, I
would have kept a copy in ICD's files. . . . I have reviewed my
files and I do not have a copy of the Standard Distribution
Agreement Grocery Channel, therefore I believe I returned the
unsigned agreement to Dreyer's requesting that Dreyer's execute the
same."  Garrett Supp. Dec. at ¶¶ 2-6.

The Court finds that, in spite of Mr. Hagan's declaration and
the circumstantial evidence, Mr. Garrett's declaration is

8

**United States District Court**
For the Northern District of California

1   sufficient to create a genuine issue of material fact on the issue

2   of whether a contract containing an arbitration clause exists.

3       Therefore, under 9 U.S.C. § 4, the Court must proceed

4   summarily to trial to determine whether a contract to arbitrate has

5   been formed.

6   III. Doctrine of Comity

7       Respondent argues that because the United States District

8   Court for the Western District of Kentucky obtained jurisdiction

9   over its claims before Petitioners filed their suit in this Court,

10  the Court should dismiss Petitioners' claims under the doctrine of

11  federal comity.

12      The doctrine of federal comity allows a district court "to

13  decline judgment on an issue which is properly before another

14  district [court]."  <u>Church of Scientology v. United States Dep't of</u>

15  <u>Army</u>, 611 F.2d 738, 749 (9th Cir. 1979).  Here, because there is a

16  dispute of fact, the Court cannot decide without a trial whether

17  Petitioners' claims are subject to a California forum selection

18  clause and an arbitration agreement.  If they are, they could not

19  be "properly before another district."  <u>Id.</u>  Therefore, the Court

20  denies this motion without prejudice to refiling if it is

21  determined that no contract with a forum selection clause and

22  arbitration agreement was executed.

23                          CONCLUSION

24      For the foregoing reasons, the Court DENIES without prejudice

25  Petitioners' motion to compel arbitration and DENIES without

26  prejudice Respondent's motion to dismiss.  Both parties must inform

27  the Court within a week of the date of this order whether or not

28                              9

they will waive jury.  They shall also indicate whether they
consent to trial, be it a bench trial or a jury trial, before a
Magistrate Judge.  A trial will be scheduled promptly.

     IT IS SO ORDERED.

Dated: 9/19/07

CLAUDIA WILKEN
United States District Judge

10